## IN THE UNITED STATES DISTRICT COURT FOR THE
## NORTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

| | | |
|---|---|---|
| JENNIFER LEWIS, | ) | |
| | ) | |
| PLAINTIFF, | ) | |
| | ) | |
| VS. | ) | CASE NO.: |
| | ) | |
| INTERNATIONAL PAPER COMPANY, | ) | |
| | ) | |
| DEFENDANT. | ) | |

---

## COMPLAINT

---

**Preliminary Statement:**

**COMES NOW** Plaintiff Jennifer Lewis ("Plaintiff" or "Lewis"), by and through undersigned counsel, and brings this action to redress the unlawful discrimination of her employer, Defendant International Paper Company.

### I.    Parties:

1.    Plaintiff is an individual resident citizen of the United States residing in State of Alabama and has been at the material times referred to herein.

2.    Defendant International Paper Company ("IP") is a corporation organized and existing under the laws of the State of New York with its principal offices in Memphis, Tennessee.  At the times material to this action, Defendant IP owned and operated the Pine Hill Containerboard Mill (the "Pine Hill Mill" or

"Mill"), a manufacturing facility located 7600 Highway 10 W., Pine Hill, Wilcox County, Alabama.

3.    At the material times referred to herein, Plaintiff has been employed at the Pine Hill Mill facility as an "Environmental Engineer IV," and worked in the Mill's Environmental, Health and Safety Department ("EHS Department").

4.    At the material times referred to herein, Plaintiff has been an "employee" of IP within the meaning of the Equal Pay Act (*see* 29 U.S.C. §203(e)(1)), Title VII (*see* 42 U.S.C. §2000e (f)), and the Age Discrimination in Employment Act of 1967 (*see* 29 U.S.C. §630 (f)).

5.    At the material times referred to herein, Defendant IP was engaged in an industry affecting commerce and employed has employed the requisite number of employees to qualify as an "employer" within the meaning of 29 U.S.C. §203(d), 42 U.S.C. §2000e (b) and/or 29 U.S.C. §630 (b).

## II.    Jurisdiction and Venue:

6.    This Court has personal jurisdiction over the Defendant IP.  IP does business in Alabama by agent, has sufficient contact with Alabama through, among other things, its ownership and operation of the Pine Hill Mill, and the acts, conduct and/or omissions of IP complained of herein were directed towards Plaintiff and caused her to suffer injury and damage in Alabama.

7.    This Court has subject matter jurisdiction pursuant to 28 U.S.C. §1331 ("Federal Question") because Plaintiff seeks relief arising under the Fair Labor Standards Act of 1938, as amended by the Equal Pay Act of 1963, 29

U.S.C. §206(d) *et seq.* ("EPA"), Title VII of the Civil Rights Act of 1964, as amended by the Civil Rights Act of 1991 ("Title VII") and the Lilly Ledbetter Fair Pay Act of 2009 ("FPA"), 42 U.S.C. §2000e *et seq.*, the Age Discrimination in Employment Act of 1967, as amended, 29 U.S.C. §621, *et seq.* ("ADEA"), and the Civil Rights Act of 1866, as amended, 42 U.S.C. §1981 ("Section 1981").

8.     The Court may exercise supplemental subject matter jurisdiction over state law claims Plaintiff may assert in the future (if any) pursuant to 28 U.S.C. §1367.

9.     Venue is proper in this district pursuant to 28 U.S.C. §1391.  IP maintains offices and regularly conducts business in this district, a substantial part of the events and omissions which give rise to the claims alleged occurred in this district and records relevant to the events and omissions are maintained and administered in this district.

### III.    Exhaustion of Administrative Remedies

10.     On September 24, 2021, Plaintiff filed a charge of discrimination (Charge No.  420-2021-03076) with the Equal Employment Opportunity Commission ("EEOC").  *See* Exhibit "A," attached hereto.

11.     Plaintiff's EEOC charge contends that Defendant IP discriminated against Plaintiff in connection with her employment on the basis of her gender (female), her race (Black), and her age (42), and that Defendant IP retaliated against her after she engaged in protected activity to oppose IP's unlawful discrimination in the workplace.

12.    Among other things, Plaintiff's EEOC charge alleges that Defendant IP discriminated against Plaintiff: 1) by paying her substantially less than her white, younger, and/or male counterparts when she performed the same or similar work; 2) by failing to consider Plaintiff for promotion and/or promote Plaintiff into job positions she sought and was qualified to perform, which had greater pay and a higher degree of authority and responsibility, thus depriving Plaintiff of career opportunity and/or reducing her ability to advance at IP; 3) by instead hiring and/or considering for promotion and/or promoting employees who were white, younger and/or male, into job positions with greater pay and a higher degree of authority and responsibility than the job held by Plaintiff, when Plaintiff was equally qualified or more qualified; 4) by treating employees who were white and/or younger and/or male preferentially, and/or in a manner which afforded such employees greater opportunity, and/or with a greater degree of lenience or accommodation concerning various conditions of employment (including without limitation assignment of job duties, approval to advance to other job positions, use of sick days or personal days, approval to perform work remotely, the scheduling holiday/vacation work shifts and time-off, *etc.*); and, 5) by creating a hostile work environment and by taking adverse employment action against Plaintiff, after she engaged in protected activity by complaining and/or communicating her opposition to IP's conduct that Plaintiff perceived as discriminatory and unlawful. *See* Exhibit "A."

13.    The EEOC has issued a "Dismissal and Notice of Rights" letter pertaining to Plaintiff's charge (Charge No. 420-2021-03076), which is dated July 26, 2023. *See attached* "Exhibit B."

14.    Plaintiff has exhausted all administrative remedies and satisfied all statutory prerequisites applicable to her claims for relief, including available administrative remedies as to her claims arising under Title VII and the ADEA.

15.    Plaintiff's action is timely filed within 90 days of her receipt of the EEOC's "Dismissal and Notice of Rights" letter, as set forth within 29 U. S. C. § 626(e) and 42 U.S.C. §2000(e)-5(f)(1).

**IV.    Factual Allegations:**

16.    Plaintiff is an African-American female who was 40-years-old at the time she was terminated from her employment (D/O/B: ███-1980) and 43 years old at the time of this Complaint.

17.    Plaintiff received her Bachelor of Business Administration degree in Computer Information Science at the University of West Alabama in 2003, and thereafter earned her Masters of Science in Psychology and a Masters Degree in Education from the University of West Alabama.

18.    Plaintiff became employed at the Pine Hill Mill in November of 2005, while the Mill was owned and operated by Weyerhauser, and when IP purchased and took over operation of the Mill in 2008 Plaintiff became an employee of IP and worked as an Administrative Assistant in the Environmental, Health and Safety Department ("EHS").

19.     Plaintiff was continuously employed by IP at the Mill, as an Administrative Assistant, from the time she became employed by IP in 2008 through the time IP terminated her employment, on or about March 29, 2021.

20.     Throughout Plaintiff's employment with IP, she was a salaried employee and her annual salary / compensation was calculated based upon IP's Pay Level 2 ("PL 2") within IP's "salary structure."

21.     IP's "salary structure" is IP's primary tool and/or one of its primary tools for administrating pay for salaried employees.

22.     IP establishes a "salary range" (salary minimum, midpoint, and maximum) for each salaried position level ("PL") periodically, and/or on an annual basis, and/or otherwise.

23.     IP's salaried positions are "tied" to active jobs listed within IP's "Job Catalog."

24.     IP's Job Catalog describes the job duties, responsibilities, and experience for each job listed within the catalog, and assigns to each listed job a PL level (which establishes a salary range for the employees' compensation).

25.     During the time of Plaintiff's employment, IP's Job Catalog had more than one job description for employees holding the "Administrative Assistant" positions within the various EHS Departments in IP's facilities.

26.     During the time of Plaintiff's employment, IP's Job Catalog listed and described "Administrative Assistant" positions within the various EHS Departments in IP's facilities assigned various levels of the job, based on experience and/or performance.

27.    IP's Job Catalog and its other administrative materials contain and describe categories of jobs and job positions within its organization by "career type," function and subfunction of the career type, and by way of example, include functions such as Administration/Business Support, Environmental Health & Safety, General Management, Information Technology, and other such categories.

28.    IP's Job Catalog and its other administrative materials further contain and describe different levels of "career types" based upon qualification, experience, levels of responsibility, and/or skill, which are separated into "career streams" and "career stream levels."

29.    Employees at IP may advance through transfer and/or promotion, by moving into roles with no change in PL level, or moving into a new role with additional responsibility at a higher PL level and potentially an increase in pay.

30.    IP contemplates that employees at the lowest career stream level will advance to higher levels in their career stream as they gain experience and perform their job in a satisfactory manner.

31.    IP refers to its career stream and career stream levels as a "Career Ladder," and IP's Job Catalog indicates that Plaintiff's PL 2 Administrative Assistant position was one of the lowest (if not the lowest) position within the Administrative Assistant positions described.

32.    Plaintiff's Administrative Assistant position (with a PL 2 salary range) is a position described within IP's Job Catalog as having 0 to 2 years' experience in the position.

33.    The Administrative Assistant position held by Plaintiff (*i.e.*, with a PL 2 salary range) is a position that typically and/or characteristically held by administrative employees having 0 to 2 years' experience in the position.

34.    During Plaintiff's employment, she sought advancement to an administrative assistant position higher than her PL 2 level, sought transfer to other positions having higher PL levels than PL 2, and/or sought transfer to other positions that would likely hold greater potential for PL advancement and greater responsibility which would advance her career.

35.    During Plaintiff's employment, she trained new hires at IP's Pine Hill Mill for positions that were tied to PL levels higher than PL 2, and watched as the new employees, who were white, male, and/or younger than herself advance in their careers based upon the training she provided.

36.    During Plaintiff's employment, she routinely performed job duties typically or characteristically performed by employees holding greater PL levels, including "filling in" for such employees on a temporary basis, and in some circumstances, Plaintiff was assigned job duties previously performed by employees holding greater PL levels after their employment ended with IP, and following their departure, she continued to perform such duties.

37.    Plaintiff sought job positions relating to employee communications and employee education, employee safety, and other positions on numerous occasions, and after watching white, male, and/or younger employees receive job assignments and promotions while she remained at PL 2, Plaintiff began

communicating complaints to IP which expressed her good faith belief that her treatment was disparate and the treatment received by white, male, and/or younger employees was preferential.

38.    Plaintiff opposed IP's employment practices by complaining about the same, based upon her good faith belief and perceptions that she was not compensated fairly, that her experience, education, level of skill, and responsibility exceeded the job duties of Administrative Assistant at PL level 2, and Plaintiff sought transfer or promotion to positions that would further her career and result in assignment of a greater PL level which would allow potential increase in pay.

39.    Additionally, Plaintiff was called upon by IP to offer information to assist IP's investigation of complaints of employment discrimination made by another employee of the Pine Hill Mill, who complained that IP had discriminated against her with respect to compensation and job position based upon her race (Black), gender (female), and age (over 40), and Plaintiff voluntarily took part in IP's investigation and request for information, and in doing so, informed IP of her good faith belief that IP's Pine Hill Mill facility had discriminated against the employee based upon her race, gender, and/or age.

40.    IP retaliated against the Plaintiff for her opposition of IP's employment practices by causing or allowing the Plaintiff to be subjected to a hostile work environment, by failing to promote Plaintiff and/or failing to consider Plaintiff for promotions that she sought, by evaluating her job performance in an

unfair, bias, and overly critical manner, and by causing or allowing Plaintiff's supervisors to act in a manner which was openly hostile and derogatory of Plaintiff's performance and abilities, and by ultimately terminating her employment on or about March 29, 2021.

41.     At the time of her termination, the only explanation offered by IP for its involuntary termination of Plaintiff's employment was that her position of Administrative Assistant (PL 2) had "been eliminated."   Restated, IP did not terminate Plaintiff "for cause" or explain her termination as based upon lack of satisfaction regarding her performance of job duties, but instead merely relied upon the pretextual and manufactured explanation that the "Administrative Assistant" position for the EHS Department had been "eliminated."

42.     Plaintiff's termination came on the heels of IP's request that Plaintiff perform the job duties of another employee, who was not in a protected class, after that employee's departure, and upon IP's request that she "take over the job duties" of the employee, Plaintiff requested a promotion to the job position and PL level of the departed employee.

43.     After Plaintiff engaged in the protected activity, she received annual job performance reviews ("Contribution Summary Assessments" or "CSAs") rated her job performance in an unfair and overly critical fashion, and/or rated her job performance as less than satisfactory, and the supervisor who engaged in the unfair and/or overly critical conduct left the employment of IP.   Following the departure of the supervisor who unfairly criticized Plaintiff's work performance,

Plaintiff's job performance was satisfactory to the individual who took over her previous supervisor's role, and Plaintiff was not made aware of any shortcomings or deficiencies in her performance thereafter.

44.     While Plaintiff was not made aware of any shortcomings or deficiencies in her performance, by her new supervisor, her new supervisor continued to assign and/or request that Plaintiff perform job duties of individual's who were compensated at a higher PL level than Plaintiff, and/or take over or assist in the performance of job duties of employees compensated at higher PL levels than Plaintiff following their departure from employment at IP, and Plaintiff continued to request promotion, higher pay, and/or transfer to positions with greater pay level and/or higher degree of responsibility.

45.     IP is one of the largest (or the largest) global paper and packaging company in the world.  IP reportedly has more than 56,000 employees worldwide and operates more than 25 manufacturing facilities in the United States.  At all material time referred to herein, IP has:

a) engaged in an industry affecting commerce, employed 15 or more employees, and was the "employer" of Lewis within the meaning of Title VII, 42 U.S.C. §2000e(b); and,

b) engaged in industry affecting commerce, employed 20 or more employees, and was the "employer" of Lewis as defined in Section 11(h) of the Age Discrimination in Employment Act (ADEA), 29 U.S.C. § 630(h).

46.     IP is a federal contractor subject to Executive Order 11246, as amended ("EO-11246"), which: (1) prohibits federal contractors within the scope

of EO-11246 from discriminating in employment decisions on the basis of race, color, religion, sex, sexual orientation, gender identity or national origin; (2) requires federal contractors within the scope of EO-11246 to take affirmative action to ensure equal opportunity is provided in all aspects of their employment; and (3) prohibits federal contractors within the scope of EO-11246 from retaliating and/or taking adverse employment actions against employees who asked about, discuss or share information about their pay with coworkers.

47.    Put another way, IP is a sophisticated employer and is keenly aware of its legal duty to adopt and enforce policies and procedures which prevent unlawful discrimination and disparate treatment in pay and promotions based upon gender, race and/or age, aware of its legal duty to avoid and/or refrain from utilizing policies and methods that promote inequities in compensation and promotions based upon gender, race and/or age, and aware of its legal duty to monitor compliance with its policies and procedures intended to prevent or avoid such illegal discrimination from occurring in the manufacturing facilities it operates in the United States (and take reasonable action to correct inconsistent application and/or non-compliance with these policies and procedures).

48.    In fact, IP publicly claims its commitment to "providing a workplace free of discrimination, harassment and retaliation" and claims it will not tolerate discrimination against "any IP job applicant or employee" because of age, race, gender or "any other classification protected by law," and says it is IP's policy to "promote the employment and advancement" of minorities and women through

affirmative action programs to "implement its equal employment opportunity commitment."

49.     However, as shown below, the numbers in this case tell a different story about IP's failure to avoid illegal discrimination at its Pine Hill facility.

## PLAINTIFF'S FIRST CAUSE OF ACTION
### Violation of the Equal Pay Act
(29 U.S.C § 206(d))

50.     Plaintiff adopts and realleges each averment of material fact alleged in paragraphs 1-49 above.

51.     IP has discriminated and continues to discriminate against Plaintiff in violation of the Equal Pay Act ("EPA") by paying Plaintiff, a female, wages at rates less than the wages paid to male employees for performing substantially equal or similar work, when viewed as a composite of skill, effort and responsibility, and performed under similar working conditions.

52.     IP discriminated against Plaintiff in violation of the Equal Pay Act ("EPA") by paying Plaintiff less than her male counterparts performing equal or similar work during the statutory period allowed for recovery.

53.     IP's failure to pay Plaintiff equal wages for performing substantially equal or similar work to her male counterparts is not due to a legitimate seniority system, merit, quantity or quality of production, or a factor other than sex, but is due to gender.

54.     IP has caused, attempted to cause, or contributed to the continuation of pay discrimination based on gender, in violation of the EPA, and IP had and has

actual and/or constructive knowledge that its failure to pay Plaintiff equal wages for performing substantially equal or similar work to her male counterparts occurred in violation of the EPA.

55.    IP's conduct constitutes a willful violation of the EPA within the meaning of 29 U.S.C. §255(a).  Because IP has willfully violated the EPA, a three-year statute of limitations applies to its violation pursuant to 29 U.S.C. §255.

56.    As a result of IP's conduct alleged in this Complaint, Plaintiff has suffered and continues to suffer harm, including but not limited to lost earnings, lost benefits and other financial loss, as well as humiliation, embarrassment, emotional and physical distress, and mental anguish.

57.    By reason of IP's discrimination, Plaintiff is entitled to all legal and equitable remedies available for violations of the EPA, including liquidated damages, interest, and other compensation pursuant to 29 U.S.C. §216(b).

58.    Attorneys' fees should be awarded under 29 U.S.C. §216(b).

## PLAINTIFF'S SECOND CAUSE OF ACTION
### Violation of Title VII Of The Civil Rights Act Of 1964
(42 U.S.C § 2000-2(A), *et seq*.)

59.    Plaintiff adopts and realleges each averment of material fact alleged in paragraphs 1-49 above.

60.    Plaintiff is member of a protected class pursuant to Title VII because of her race (Black) and gender (female).

61.    Defendant IP discriminated and continues to discriminate against Plaintiff in violation of Title VII by paying Plaintiff wages at rates less than the

wages paid to male and/or white employees for performing substantially equal or similar work, when viewed as a composite of skill, effort and responsibility, and performed under similar working conditions.

62.    IP's violation of the EPA is also a violation of Title VII.  29 C.F.R. §1620.27.

63.    Defendant IP discriminated against Plaintiff in violation of Title VII by hiring or promoting an employee or employees who were white and/or male and paying Plaintiff wages at rates less than the wages paid to the white and/or male employees.

64.    Defendant IP discriminated against Plaintiff in violation of Title VII by failing to promote Plaintiff, and by instead promoting an employee or employees who were white and/or male, who were less qualified and experienced in comparison to Plaintiff.

65.    IP's failure to pay Plaintiff equal compensation for equal work and failure to promote Plaintiff constitutes an adverse employment event, and because IP paid white and/or male employees greater compensation for performing equal or substantially similar work, and promoted white and/or male employees who were less qualified than Plaintiff in violation of Title VII, a *prima facie* case is presented.

66.    IP's failure to pay Plaintiff equal compensation for equal work and failure to promote Plaintiff was the result of Plaintiff being a member of one or more protected classes, and to the extent IP's discrimination was based upon

Plaintiff being a member of one or both of the protected classes (Black and/or female), in whole or in part, IP's discrimination was based upon or the result of a "mixed motive."

67.     IP's discrimination and/or failure to refrain from or prevent the unlawful discrimination was willful and intentional.

68.     As a result of IP's conduct alleged in this Complaint, Plaintiff has suffered and continues to suffer harm, including but not limited to lost earnings, lost benefits and other financial loss, as well as humiliation, embarrassment, emotional and physical distress, and mental anguish.

69.     By reason of IP's discrimination, Plaintiff is entitled to all legal and equitable remedies available for violations of Title VII, including an award of nominal, liquidated and compensatory damages, an award of punitive damages, an award of backpay, front pay, lost benefits, recovery of penalties, and other damages for lost compensation and job benefits.

70.     Attorneys' fees should be awarded under 42 U.S.C. § 2000e-5(k).

### PLAINTIFF'S THIRD CAUSE OF ACTION
### Violation of Title VII Of The Civil Rights Act Of 1964
### (42 U.S.C § 2000-2(A), *et seq*.)

71.     Plaintiff adopts and realleges each averment of material fact alleged in paragraphs 1-49 above.

72.     Plaintiff avers that IP's employment policies and practice have resulted in disparate impact, and resulted in injury to Plaintiff as a result of her gender (female) and race (Black).

73    Among other things, IP's employment policies and practices foster unwarranted stereotypical assumptions and subjective evaluation regarding Plaintiff and individuals who are similarly situated to Plaintiff.

74.    More particularly, IP's employment practices allow IP recruiters and decision-makers to consider and rely upon the salary earned by male/white applicants applying for employment and/or promotion, and by considering and relying upon previous salaries earned by male/white applicants or employees, IP perpetuates previous income disparity which has resulted from invidious discrimination.

75.    IP's employment practices have a disparate impact upon members of protected classes pursuant to Title VII, and Plaintiff suffered proximate injury and damage as a result of IP's employment policies and practices in that IP failed to pay her equal compensation in comparison to white and/or male employees, and failed to promote Plaintiff while instead promoting a white and/or male employees who were less qualified than Plaintiff.

76.    As a result of IP's conduct alleged in this Complaint, Plaintiff has suffered and continues to suffer harm, including but not limited to lost earnings, lost benefits and other financial loss, as well as humiliation, embarrassment, emotional and physical distress, and mental anguish.

77.    By reason of IP's discrimination, Plaintiff is entitled to all legal and equitable remedies available for violations of Title VII, including an award of nominal, liquidated and compensatory damages, an award of punitive damages, an

award of backpay, front pay, lost benefits, recovery of penalties, and other damages for lost compensation and job benefits.

78.    Attorneys' fees should be awarded under 42 U.S.C. § 2000e-5(k).

**PLAINTIFF'S FOURTH CAUSE OF ACTION**
**Violation of the Age Discrimination in Employment Act of 1967**
**(29 U.S.C. §621, *et seq*.)**

79.    Plaintiff adopts and realleges each averment of material fact alleged in paragraphs 1-49 above.

80.    Plaintiff was a member of a protected class pursuant to Age Discrimination in Employment Act of 1967, as amended, 29 U.S.C. §621, *et seq*. ("ADEA"), at the time she was terminated by IP.

81.    Defendant IP discriminated against Plaintiff in violation of the ADEA by hiring employees who were younger and paying Plaintiff wages at rates less than the wages paid to the younger employee, and/or by treating employees who were younger more favorably than the Plaintiff, and/or by replacing Plaintiff with an employee who was younger.

82.    Defendant IP discriminated against Plaintiff in violation of the ADEA by failing to promote Plaintiff, and by instead promoting employees who were not a member of the protected class, who were less qualified, less experienced and had less seniority than Plaintiff.

83.    Defendant IP discriminated against Plaintiff in violation of the ADEA by engaging in preferential and disparate treatment with regard to the compensation and conditions of employment provided to a younger employee.

84.    As a result of IP's conduct alleged in this Complaint, Plaintiff has suffered and continues to suffer harm, including but not limited to lost earnings, lost benefits and other financial loss, as well as humiliation, embarrassment, emotional and physical distress, and mental anguish.

85.    By reason of IP's discrimination, Plaintiff is entitled to all legal and equitable remedies available for violations of ADEA, including an award of nominal, liquidated and compensatory damages, an award of punitive damages, an award of backpay, front pay, lost benefits, recovery of penalties, and other damages for lost compensation and job benefits.

86.    Attorneys' fees should be awarded under 29 U.S.C. §621, *et seq*.

## PLAINTIFF'S FIFTH CAUSE OF ACTION
### Retaliation

87.    Plaintiff adopts and realleges each averment of material fact alleged in paragraphs 1-49 above.

88.    IP engaged in retaliation against Plaintiff as a result of her actions and involvement and protected activities which opposed IP's unlawful discrimination.

89.    IP's retaliation against Plaintiff for engaging in protected activities occurred in violation of the EPA, Title VII and the ADEA.

90.    Plaintiff's opposition to IP's employment practices occurred with the good faith belief on her part that IP had engaged in conduct which was unlawful, and as a result of IP's conduct alleged in this Complaint, Plaintiff has suffered and

continues to suffer harm, including but not limited to lost earnings, lost benefits and other financial loss, as well as humiliation, embarrassment, emotional and physical distress, and mental anguish.

91.    By reason of IP's retaliation, Plaintiff is entitled to all legal and equitable remedies available for violations of EPA, Title VII and the ADEA, including an award of nominal, liquidated and compensatory damages, an award of punitive damages, an award of backpay, front pay, lost benefits, recovery of penalties, and other damages for lost compensation and job benefits.

92.    Attorneys' fees should be awarded under the provisions of the EPA, Title VII and the ADEA.

**PLAINTIFF'S SIXTH CAUSE OF ACTION**
**Violation of Civil Rights Act of 1866, as amended;**
**(42 U.S.C. §1981)**

93.    Plaintiff adopts and realleges each averment of material fact alleged in paragraphs 1-49 above.

94.    Plaintiff avers that IP's failure to pay Plaintiff compensation equal to the compensation IP paid white employees for performing equal or similar work violated Section 1981 of the Civil Rights Act of 1866, as amended.

95.    Plaintiff avers that IP's failure to consider and review Plaintiff's education, work history and experience in making its employment decision, and IP's decision to promote a white employee with less education, work history and experience, while denying Plaintiff such a promotion or the opportunity to be

considered for such a promotion, violated Section 1981 of the Civil Rights Act of 1866, as amended.

96.     As a result of IP's violation of Section 1981, Plaintiff has suffered and continues to suffer harm, including but not limited to lost earnings, lost benefits and other financial loss, as well as humiliation, embarrassment, emotional and physical distress, and mental anguish.

97.     By reason of IP's violation of Section 1981, Plaintiff is entitled to an award of nominal, liquidated and compensatory damages, an award of punitive damages, an award of backpay, front pay, lost benefits, recovery of penalties, and other damages for lost compensation and job benefits.

98.     Attorneys' fees should be awarded.

Respectfully Submitted,

On Behalf of Plaintiff:                          _____*s/James R. Morgan*_____
James R. Morgan, P.C.                        James R. Morgan (asb-5774-n71j)
1605 – 21st Street South
Birmingham, Alabama 35205
Telephone:  (205) 918-0808
Facsimile:  (205) 918-0807
E-Mail: Jim@JMorganPC.com


**PLAINTIFF DEMANDS A TRIAL BY STRUCK JURY IN THIS CAUSE.**

_____*s/James R. Morgan*_____
James R. Morgan

<u>PLAINTIFF'S ADDRESS</u>:

Jennifer Lewis
c/o James R. Morgan, P.C.
1605 Richard Arrington Jr Blvd S
Birmingham, Alabama 35205

## **<u>DEFENDANT ADDRESS FOR SERVICE VIA CERTIFIED MAIL, AS FOLLOWS:</u>**

International Paper Company
c/o CT Corporation System
2 North Jackson St, Suite 605
Montgomery, AL 36104

# CHARGE OF DISCRIMINATION

This form is affected by the Privacy Act of 1974; See Privacy Act Statement before completing this form.

| AGENCY | CHARGE NUMBER |
|---|---|
| ☐ FEPA | |
| ☒ EEOC | 420-2021-03076 |

and EEOC

State or local Agency, if any

| NAME (Indicate Mr., Ms., Mrs.) | HOME TELEPHONE (Include Area Code) |
|---|---|
| Mrs. Jennifer Rena Lewis | 334-471-0825 |

| STREET ADDRESS | CITY, STATE AND ZIP CODE | DATE OF BIRTH |
|---|---|---|
| 180 Mockingbird Ln | Dixons Mill, AL 36736 | 1980 |

NAMED IS THE EMPLOYER, LABOR ORGANIZATION, EMPLOYMENT AGENCY, APPRENTICESHIP COMMITTEE, STATE OR LOCAL GOVERNMENT AGENCY WHO DISCRIMINATED AGAINST ME (If more than one list below.)

| NAME | NUMBER OF EMPLOYEES, MEMBERS | TELEPHONE (Include Area Code) |
|---|---|---|
| International Paper Co | >400 | 334-963-4391 |

| STREET ADDRESS | CITY, STATE AND ZIP CODE | COUNTY |
|---|---|---|
| 7600 AL-10 | Pine Hill, AL 36769 | Wilcox |

| NAME | TELEPHONE NUMBER (Include Area Code) |
|---|---|
| | |

| STREET ADDRESS | CITY, STATE AND ZIP CODE | COUNTY |
|---|---|---|
| | | |

CAUSE OF DISCRIMINATION BASED ON (Check appropriate box(es))

☒ RACE   ☒ COLOR   ☒ SEX   ☐ RELIGION   ☐ NATIONAL ORIGIN
☒ RETALIATION   ☒ AGE   ☐ DISABILITY   ☐ OTHER (Specify)

DATE DISCRIMINATION TOOK PLACE

March 29, 2021 and before.

☐ CONTINUING ACTION

THE PARTICULARS ARE (If additional paper is needed, attach extra sheet(s)):

Continued - See Attached Sheets

| I want this charge filed with both the EEOC and the State or local Agency, if any. I will advise the agencies if I change my address or telephone number and I will cooperate fully with them in the processing of my charge in accordance with their procedures. | NOTARY - (When necessary for State and local Requirements) |
|---|---|
| I declare under penalty of perjury that the foregoing is true and correct. | I swear or affirm that I have read the above charge and that it is true to the best of my knowledge, information and belief. |
| | SIGNATURE OF COMPLAINANT |
| September 24, 2021 | |
| *Jennifer Lewis* | SUBSCRIBED AND SWORN TO BEFORE ME THIS DATE (Day, month, and year) |
| Date          Charging Party (Signature) | |

EEOC FORM 5 (REV. 3/01)

EXHIBIT "A"

My name is Jennifer Lewis. I am black female. I am 41 years old and my date of birth is ███ '80. I was employed by International Paper Company ("IP") at the Pine Hill Containerboard Mill ("Pine Hill Mill") facility located at 7600 Highway 10 W., Pine Hill, Alabama 36769, and I was terminated from my employment with IP on March 29, 2021.

I began employment at the Pine Hill, Alabama plant on November 21, 2005, when the mill was owned by Weyerhauser.    International Paper ("IP") purchased the Pine Hill Mill from Weyerhauser in approximately 2008, and I was continuously employed by IP from approximately 2008 through the time of my termination on March 29, 2021.

IP has engaged in discrimination against me during my employment, based upon my age, sex and race. IP has also retaliated against me for reporting and complaining about the discriminatory conduct to IP's Human Resources Department.

From the time I began my employment with IP in approximately 2008 through the time of my termination on March 29, 2021, I have held the same position of Administrative Assistant II reporting to the manager of the EHS department and received compensation at IP's "pay level 2" ("PL 2"). During my employment with IP, I have sought and requested a promotion from my current job ("Administrative Assistant II at PL 2), and I have repeatedly made IP aware that I would like to be considered for promotions to advance my career and to have a broader scope of responsibility within the company. IP has instead consistently hired, awarded or promoted male employees (who were white and younger) into the better job positions, even though the male employees have had less experience, education, qualifications and tenure with IP. IP has used "the good ole boys' club" business model to hire and promote male employees, in complete disregard of equal pay and equal employment and anti-discrimination laws.

In the weeks prior to my termination, a younger white male (Christopher Whitfield) who held the "safety engineer" in the left his position EHS department. I was familiar with the job duties of the younger white male before he left his position as "safety engineer" in the EHS department, and in fact, regularly performed job duties that he performed. I believe that during his employment the younger white male was compensated at a pay level substantially higher than the pay level compensation that I received, even though I regularly performed the job duties of the position held by the younger white male. After the younger white male left his job position of "safety engineer" in the EHS department, I performed all or substantially all of the job duties performed by the younger white male. Several weeks after the younger white male left his job position of "safety engineer," I communicated with my supervisor (a white female), and informed my supervisor that I desired a promotion to the position of "safety engineer," expressed my desire to receive a raise in compensation from PL 2. Within days of communicating my request for a promotion and/or raise to my supervisor, I was instructed to attend a meeting with a human resources employee, and at that meeting I was informed that my position of Administrative Assistant II in the EHS department was "being eliminated" and that my employment with IP was terminated. I believe that IP's decision to terminate my employment was the result of illegally discrimination against me based upon my age - 40; my sex - female; my race -black, and the result of retaliation against me because I had previously voiced my complaints and belief that IP's failure to promote me, offer me equal job opportunities for advancement, and/or otherwise compensate me in a manner equal

to the compensation received by younger, white, and male employees who were less qualified and/or had less qualifications or job experience that I had constituted illegal discrimination.

During my employment with IP, I was even been told that I was not qualified for a promotion when I had trained the employee who had previously held the position that I was applying for. In other words, I had trained white, younger and/or employees who were then promoted to various better positions and then when I applied for that position, I was told that I was not qualified.

During my employment with IP, IP has hired applicants (white females) that had husbands that worked as managers or were friends with the managers at the plant over me.

During the last half of 2017, a white female with no college education and with less than 2 years with IP, was promoted to the CMMS position which I had also applied for. I was more qualified and had more experience with the company. In November of 2017, I asked the HR generalist, Tyler Lampley, about the fact that I wasn't hired. I asked Tyler to send me a formal rejection letter or the reasons that were given that I did not get the CMMS/admin position, but did not receive a formal response.

I also asked when they were looking to hire for the DLL Finished Products position if I could be kept informed and considered for an interview for that position, but ultimately a black female was demoted to the position and a non-black female was awarded the demoted black female's position. From 2017 through February 2019, I have repeatedly made inquiries as to why I have never been promoted when I have applied for several other open positions at the Mill and the only informal response I received was "not enough experience," even though I have worked for IP for over 13 years. I had hoped that my education, experience and training would give me an advantage over or ahead of other applicants, but this has not been the case. IP continued to hire white females with less qualifications, experience and education instead of promoting me when the opportunity arises.

Beginning in 2016 through 2019, I requested a formal salary inquiry on my position, a job title change, a pay level (PL) increase and raise because I had continued to take on more responsibilities over the past 13 years and never moved above a PL 2 pay grade despite the fact that I had great evaluations over the years, have always done my job and never received any formal complaints.

During this same time, my workload has continued to increase. From 2016 through 2019, I have complained about the above treatment to my managers, Reuben Soto and Sean Blenis, the mill manager, Kevin Walls, and the HR Managers, Gene Adams, Stephanie Weathers, Carla Menindall.

In January 2019, I again brought these adverse employment practices to the attention of IP. Afterwards, my manager, Reuben Soto, began treating me in a confrontational and disrespectful manner, including yelling at me, accusing me of lying, and using excitable and threatening body language and hand gestures when speaking to me. In March 2019, I was given an employment evaluation. For the first time ever, I was given a bad performance evaluation, in writing, and refused a raise in pay by Mr. Soto and signed off on by Mr. Walls. I was shocked when I read the evaluation because I had expected to receive an "exceeds expectation" and a pay raise because I had taken on so much additional work. I asked Mr. Soto what I had done wrong and he told me

that even though, I had done my job, that he wanted more and to see it for a whole year. He also told me that I was not working hard enough and that I was not providing enough support to the lead team.

I believe it is obvious that IP's recent negative treatment is in retaliation of my complaints and also to justify their failure to promote me and their continued hiring and promoting of white females over me and refusing pay raises. IP has cultivated a work environment where black employees are not valued, not promoted, and are treated unfavorably compared to their white counterparts. IP has a "good old boys" culture where the majority white managers discriminate against black employees by preventing them from moving up in the company and opportunities to make more money. When questioned about an adverse and questionable hire, my managers have fostered a fear of retaliation. At my last performance review, my supervisors told me that I needed to work on things that were not even included on my yearly objectives or mid-year developmental review.

IP has discriminated against me because I am a black, female and based upon my age. As a result, I have lost employment opportunities, pay raises and salary increases. I have been denied the opportunity for success in my career because I am black, I am a female and older than other employees. IP has used the "good old boys" system instead of following the legal system that provides an equal opportunity and pay to all races and genders. IP has failed to apply and enforce its policies equally among all employees and has failed to take steps to address or stop discrimination, retaliation and other adverse conduct.



**U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION**

**Birmingham District Office**
1130 22nd Street South, Suite 2000
Birmingham, AL 35205
(205) 651-7032
Website: www.eeoc.gov

## DISMISSAL AND NOTICE OF RIGHTS
(This Notice replaces EEOC FORMS 161, 161-A & 161-B)

Issued On: 07/26/2023

**To:** Jennifer R. Lewis
180 Mockingbird Lane
Dixons Mills, AL 36736
Charge No: 420-2021-03076

EEOC Representative and email:    Richard Grooms, Federal Investigator
richard.grooms@eeoc.gov

### DISMISSAL OF CHARGE

The EEOC has granted your request for a Notice of Right to Sue, and more than 180 days have passed since the filing of this charge.

The EEOC is terminating its processing of this charge.

### NOTICE OF YOUR RIGHT TO SUE

This is official notice from the EEOC of the dismissal of your charge and of your right to sue. If you choose to file a lawsuit against the respondent(s) on this charge under federal law in federal or state court, **your lawsuit must be filed WITHIN 90 DAYS of your receipt of this notice.** Receipt generally occurs on the date that you (or your representative) view this document. You should keep a record of the date you received this notice. Your right to sue based on this charge will be lost if you do not file a lawsuit in court within 90 days. (The time limit for filing a lawsuit based on a claim under state law may be different.)

If you file a lawsuit based on this charge, please sign-in to the EEOC Public Portal and upload the court complaint to charge 420-2021-03076.

On behalf of the Commission,

**Richard Grooms,
Federal Investigator**

cn=Richard Grooms, Federal Investigator, o=US Equal
Employment Opportunity Commission,
ou=Enforcement, email=richard.grooms@eeoc.gov,
c=US
2023.07.26 16:17:56 -05'00'

*for* Bradley A. Anderson
District Director

**Cc:** Ford Harrison LLP
Russell W. Jackson, Esq.
1715 Aaron Brenner Dr.; Ste. 200
Memphis, TN 38120

James R. Morgan, PC
James R. Morgan, Esq.
1605 Richard Arrington Jr Blvd S.
Birmingham, AL 35205

Please retain this notice for your records.

EXHIBIT "B"

Enclosure with EEOC Notice of Closure and Rights (01/22)

# INFORMATION RELATED TO FILING SUIT
# UNDER THE LAWS ENFORCED BY THE EEOC

*(This information relates to filing suit in Federal or State court **under Federal law**. If you also plan to sue claiming violations of State law, please be aware that time limits may be shorter and other provisions of State law may be different than those described below.)*

## IMPORTANT TIME LIMITS – 90 DAYS TO FILE A LAWSUIT

If you choose to file a lawsuit against the respondent(s) named in the charge of discrimination, you must file a complaint in court **within 90 days of the date you *receive* this Notice**. Receipt generally means the date when you (or your representative) opened this email or mail. You should **keep a record of the date you received this notice**. Once this 90-day period has passed, your right to sue based on the charge referred to in this Notice will be lost. If you intend to consult an attorney, you should do so promptly. Give your attorney a copy of this Notice, and the record of your receiving it (email or envelope).

If your lawsuit includes a claim under the Equal Pay Act (EPA), you must file your complaint in court within 2 years (3 years for willful violations) of the date you did not receive equal pay. This time limit for filing an EPA lawsuit is separate from the 90-day filing period under Title VII, the ADA, GINA, the ADEA, or the PWFA referred to above. Therefore, if you also plan to sue under Title VII, the ADA, GINA, the ADEA or the PWFA, in addition to suing on the EPA claim, your lawsuit must be filed within 90 days of this Notice and within the 2- or 3-year EPA period.

Your lawsuit may be filed in U.S. District Court or a State court of competent jurisdiction. Whether you file in Federal or State court is a matter for you to decide after talking to your attorney. You must file a "complaint" that contains a short statement of the facts of your case which shows that you are entitled to relief. Filing this Notice is not enough. For more information about filing a lawsuit, go to https://www.eeoc.gov/employees/lawsuit.cfm.

## ATTORNEY REPRESENTATION

For information about locating an attorney to represent you, go to:
https://www.eeoc.gov/employees/lawsuit.cfm.

In very limited circumstances, a U.S. District Court may appoint an attorney to represent individuals who demonstrate that they are financially unable to afford an attorney.

## HOW TO REQUEST YOUR CHARGE FILE AND 90-DAY TIME LIMIT FOR REQUESTS

There are two ways to request a charge file: 1) a FOIA Request or 2) a Section 83 request. You may request your charge file under either or both procedures. EEOC can generally respond to Section 83 requests more promptly than FOIA requests.

Since a lawsuit must be filed within 90 days of this notice, please submit your request for the charge file promptly to allow sufficient time for EEOC to respond and for your review. Submit a signed written request stating it is a "FOIA Request" or a "Section 83 Request" for Charge Number 420-2021-03076 to the District Director at Bradley Anderson, 1130 22nd Street South Suite 2000

Birmingham, AL 35205.

You can also make a FOIA request online at https://eeoc.arkcase.com/foia/portal/login.

Enclosure with EEOC Notice of Closure and Rights (01/22)

You may request the charge file up to 90 days after receiving this Notice of Right to Sue.  After the 90 days have passed, you may request the charge file only if you have filed a lawsuit in court and provide a copy of the court complaint to EEOC.

For more information on submitting FOIA Requests and Section 83 Requests, go to: https://www.eeoc.gov/eeoc/foia/index.cfm.